

## IN THE COURT OF CRIMINAL APPEALS
## OF TEXAS

### NO. PD-0690-22

### EX PARTE LUCAS VIEIRA, Appellant

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIRST COURT OF APPEALS
### HARRIS COUNTY

KELLER, P.J., delivered the opinion of the Court in which HERVEY, RICHARDSON, YEARY, NEWELL, WALKER, SLAUGHTER and MCCLURE, JJ., joined. KEEL, J., concurred.

### O P I N I O N

Was an indictment returned on July 9, 2021, for an aggravated assault committed on July 7, 2019, brought within the applicable two-year statute of limitations? We find that it was not and reverse the judgments of the courts below.

### I. BACKGROUND

### A. Trial Court

On July 9, 2021, Appellant was indicted for aggravated assault by threat while acting as a

public servant.[1]  The indictment alleged that the offense occurred on or about July 7, 2019.

Appellant filed a pretrial application for writ of habeas corpus, claiming the indictment is time-barred because it was filed more than two years after the date of the offense.  The trial court denied Appellant's habeas application, and Appellant timely appealed.

### B. Court of Appeals

Appellant argued on direct appeal that under Code of Criminal Procedure Article 12.04, the last day of the two-year limitations period for an offense occurring on July 7, 2019, is July 7, 2021, and that an indictment filed on July 9, 2021, is two days late.[2]  The court of appeals disagreed:

> Here, the alleged offense occurred on July 7, 2019.  Pursuant to article 12.04, July 7, 2019 is excluded from the computation of the limitations period, and the first day of the period was July 8, 2019.  *See* TEX. CODE CRIM. PROC. ANN. art. 12.04 ("The day on which the offense was committed . . . shall be excluded from the computation of time.").  Applying the plain language of the statute, the two-year limitations period for aggravated assault ended on July 8, 2021.  *See* TEX. CODE CRIM. PROC. ANN. art. 12.02(a), 12.03.  However, as appellant acknowledges, taking into account the language of article 12.04, we must not "count[ ] the day of the indictment," and therefore, an indictment dated July 9, 2021 would be "filed on the last day."  *See* TEX. CODE CRIM. PROC. ANN. art. 12.04 (". . . the day on which the indictment or information is presented shall be excluded from the computation of time.").  Accordingly, we conclude that the indictment, dated July 9, 2021, was returned within the limitations period.  *See* TEX. CODE CRIM. PROC. ANN. art. 12.02(a), 12.04.[3]

Justice Goodman dissented from the denial of *en banc* reconsideration.[4]  He would have held that

---

[1]  TEX. PENAL CODE § 22.02(a)(2) ("A person commits an offense if the person commits assault as defined in § 22.01 and the person: . . . (2) uses or exhibits a deadly weapon during the commission of the assault."), (b)(2)(A) (". . . the offense is committed . . . by a public servant acting under color of the servant's office or employment").

[2]  *Ex parte Vieira*, No. 01-21-00464-CR, 2022 WL 3363935, at *4 (Tex. App.—Houston [1st Dist.] Aug. 16, 2020).

[3]  *Id.* at *5 (alteration in original).

[4]  *Id.* at *6 (Goodman, J., dissenting to denial of *en banc* reconsideration).

the statute of limitations was violated.[5]

We granted Appellant's petition for discretionary review to determine whether the court of appeals's analysis correctly applied Article 12.04 to the two-year statute of limitations.

## II. ANALYSIS

### A. Cognizability

Before we address the merits of Appellant's claim, we must decide whether it is cognizable in a pretrial habeas writ. Pretrial habeas, followed by an interlocutory appeal, is an extraordinary remedy.[6] Neither the parties nor the court of appeals addressed cognizability, but it must be addressed.[7]

Generally, a pretrial writ of habeas corpus is not available to test the sufficiency of an indictment.[8] One historical exception to the rule is when the face of the indictment "shows that the offense charged is barred by limitations."[9] In *Ex parte Edwards*, we clarified that this exception does not apply if the record suggests the indictment can be amended to cure the defect or if a statute provides that the applicable limitations period may turn on a question of fact.[10]

---

[5] *Id.*

[6] *Ex parte Ingram*, 533 S.W.3d 887, 891 (Tex. Crim. App. 2017).

[7] *Ex parte Ellis*, 309 S.W.3d 71, 79 (Tex. Crim. App. 2010).

[8] *Ex parte Doster*, 303 S.W.3d 720, 724 (Tex. Crim. App. 2010).

[9] *Ex parte Weise*, 55 S.W.3d 617, 620 (Tex. Crim. App. 2001).

[10] *See Ex parte Edwards*, 663 S.W.3d 614, 617-18 (Tex. Crim. App. 2022) (discussing tolling and factually-based statutes of limitation).

Here, Appellant was charged with a first degree felony.[11] The statute of limitations for the offense is, however, the same as that for "the primary crime."[12] The primary crime here is misdemeanor assault by threat,[13] which has a two-year statute of limitations.[14] The parties agree that the statute of limitations for aggravated assault by threat while acting as a public servant is also two years.[15]

Nothing in the relevant statutes suggests that the applicable statute of limitations might turn on a fact issue.[16] Neither the indictment nor the record include any facts that would otherwise toll or extend the limitations period, and the State does not claim that they do. Appellant's claim is cognizable because there is nothing to consider beyond the face of the indictment, and resolution in his favor would render the indictment irreparable.[17]

---

[11] *Id.* § 22.02(b)(2)(A) ("An offense under this section...is a felony of the first degree if...the offense is committed: (A) by a public servant acting under color of the servant's office or employment[.]").

[12] TEX. CODE CRIM. PROC. art. 12.03(d) ("Except as otherwise provided by this chapter, any offense that bears the title 'aggravated' shall carry the same limitation period as the primary crime.").

[13] TEX. PENAL CODE § 22.01(a)(2) ("A person commits an offense if the person: . . . (2) intentionally or knowingly threatens another with imminent bodily injury...[.]"); *id.* § 22.01(c) ("An offense under Subsection (a)(2) or (3) is a Class C misdemeanor[.]").

[14] TEX. CODE CRIM. PROC. art 12.02(b) ("A complaint or information for any Class C misdemeanor may be presented within two years from the date of the commission of the offense, and not afterward.").

[15] *See State v. Schunior*, 506 S.W.3d 29, 37 (Tex. Crim. App. 2016) ("Article 12.03(d) yields a two-year limitation period if the primary crime is misdemeanor assault.").

[16] *See* TEX. CODE CRIM. PROC. art 12.02(b).

[17] *See Edwards*, 663 S.W.3d at 617-18. *See, e.g.*, *Ex parte Tamez*, 38 S.W.3d 159, 161 (Tex. Crim. App. 2001) (affirming court of appeals's jurisdiction to resolve statute of limitations claim where the only question was whether the indictment was issued within two years of the date of the

## B. Merits

### 1. *Rules of Construction*

We review questions regarding the interpretation of statutes *de novo*.[18] When interpreting statutory language, we focus first on the literal text of the statute because it provides the best means to determine the "fair, objective meaning of that text at the time of its enactment."[19] When interpreting a statute, we presume that every word and sentence should be given effect.[20] We construe words and phrases according to the rules of grammar and common usage.[21] And we consider other relevant statutory provisions to harmonize and avoid conflicts.[22]

We may consider extra-textual factors, such as the object sought by the Legislature and the consequences of a particular construction,[23] only if the statutory language is ambiguous or the plain meaning would lead to absurd results that the Legislature could not possibly have intended.[24] A statute is ambiguous when "it may be understood by reasonably well-informed persons in two or

---

offense as alleged in the indictment).

[18] *See Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011) (pure questions of law are reviewed *de novo*).

[19] *Clinton v. State*, 354 S.W.3d 795, 800 (Tex. Crim. App. 2011) (quoting *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991)).

[20] *Watkins v. State*, 619 S.W.3d 265, 272 (Tex. Crim. App. 2021).

[21] *Lopez v. State*, 253 S.W.3d 680, 685 (Tex. Crim. App. 2008).

[22] *Watkins*, 619 S.W.3d at 272.

[23] *See id.* (listing extra-textual factors).

[24] *Boykin*, 818 S.W.2d at 785.

more different senses."[25]

As previously noted, the statute of limitations for aggravated assault by threat while acting as a public servant is two years.[26] The parties agree that the alleged offense took place on July 7, 2019, and that the indictment was returned on July 9, 2021. At issue in this case are two provisions used to compute periods of time: Article 12.04 of the Code of Criminal Procedure and Section 311.014(c) of the Government Code. The State seeks to use both together to arrive at the conclusion that the indictment was filed on time. As we shall see later, if either of these statutes is used alone, the indictment was untimely. The State's claim of timeliness depends on these two provisions working in tandem in a certain way. To understand why the State's claim fails, we look at how each provision would work alone, why each provision works the way it does, and why the provisions cannot work in tandem in the way the State suggests.

### 2. *Article 12.04 Alone*

Article 12.04 says, "The day on which the offense was committed and the day on which the indictment or information is presented shall be excluded from the computation of time."[27] Applying the plain language of the statute, we eliminate July 7, 2019, and July 9, 2021. This leaves us with a period that starts on and includes July 8, 2019, and that ends on and includes July 8, 2021. The court of appeals reached this same result, but found that this period is within the two-year statute of limitations. We disagree. As we shall explain, this period of time exceeds two years under any accepted definition of "year."

---

[25] *Bryant v. State*, 391 S.W.3d 86, 92 (Tex. Crim. App. 2012).

[26] *See supra* at nn. 12-15 and accompanying text.

[27] TEX. CODE CRIM. PROC. art 12.04.

A calendar year has 365 days, unless the year is a leap year, in which case there are 366 days. Texas Government Code § 311.005(12) defines a "Year" as "12 consecutive months."[28] Twelve consecutive calendar months have 365 days unless they encompass the month of February in a leap year, in which case there are 366 days. Two regular years is 730 days. 2020 was a leap year, so the calculation is a little more complicated, but not significantly so. Because 2020 was a leap year, there was an extra day in the two-year period in this case, meaning the two-year period was 731 days instead of the usual 730.

From and including July 8, 2019, to and including July 8, 2021, is 732 days, which exceeds the two-year period by one day. For a period that does not include a leap year, two years would end 730 days after the date of the offense. But regardless of whether there is a leap year, when the limitation period is two years, Article 12.04's plain language dictates that the last day on which an indictment may be filed for an offense committed on July 7th is July 8th two years later. Under this scheme of computation, the indictment returned on July 9, 2021 was one day too late.

### 3. *Texas Government Code Alone*

The State argues that calculating the end date this way—under Article 12.04 alone—runs afoul of the Code Construction Act (Chapter 311 of the Government Code).[29] As explained earlier, Texas Government Code § 311.005(12) defines a "Year" as "12 consecutive months."[30] So, the argument goes, a two-year limitations period is twenty-four consecutive months. The State then

---

[28] TEX. GOV'T CODE § 311.005(12).

[29] *See* TEX. GOV'T CODE § 311.001 ("This chapter may be cited as the Code Construction Act.").

[30] TEX. GOV'T CODE § 311.005(12).

refers us to the Texas Government Code provision that computes time for "months"—§ 311.014(c)—which says:

> If a number of months is to be computed by counting the months from a particular day, the period ends on the same numerical day in the concluding month as the day of the month from which the computation is begun, unless there are not that many days in the concluding month, in which case the period ends on the last day of that month.[31]

If we rely solely on the plain language of the Government Code provisions, the State's indictment is untimely. Texas Code of Criminal Procedure Article 12.02(b) says that an indictment "may be presented within two years *from the date of the commission of the offense*, and not afterward."[32] Section 311.014(c) says that, when calculating a period of months "*from a particular day*," we end on the same day of the month "*from which the computation is begun*."[33] Here, the "particular day" from which the calculation begins is the date of the offense—July 7, 2019. And because the computation begins on July 7, 2019, under Section 311.014(c), the computation must end on the same day of the month—July 7, 2021. The indictment filed on July 9, 2021, falls outside this time period.

### 4. *Combining the Statutes Does Not Work*

The State argues that Article 12.04 and Section 311.014(c) work in tandem to, essentially, give the State an additional day beyond the two-year limitations period. The State claims that Article 12.04 excludes July 7, 2019—the date of the offense—from the time period. The State then

---

[31] *Id.* § 311.014(c).

[32] *Id.* art. 12.02(b) (emphasis added).

[33] TEX. GOV'T CODE § 311.014(c) (emphasis added).

contends that the time period runs under Section 311.014(c) from July 8, 2019 to July 8, 2021. The State finally contends that Article 12.04 then excludes the next day—July 9, 2021—from the calculations, allowing the indictment to be returned on July 9, 2021. We disagree for several reasons.

First, the State's construction ignores the plain language of Section 311.014(c) and Code of Criminal Procedure Article 12.02. As we explained earlier, Section 311.014(c) says that, when calculating a period of months "*from* a particular day," we end on the same day of the month "*from* which the computation is begun."[34] And we have explained that Article 12.02(b) says that an indictment "may be presented within two years *from* the date of the commission of the offense."[35] Under a plain reading of these statutes, all of these instances of the word "from" are referring to the same date. The day the offense was committed, the day from which the period of months is calculated, and the day from which the computation begins are all the *same date*. That means, under Section 311.014(c), if July 7th is the date of the offense, then that same July 7th *must* be the date from which the monthly computation begins, and consequently, a later July 7th must be the date on which the monthly computation ends.

Article 12.04 does not change that. That statute says that "[t]he day on which the offense was committed . . . shall be excluded from the computation of time."[36] That does not mean, though, that the next day becomes the day from which the computation *begins*. Article 12.04 does not say that. In fact, the day from which a computation begins is typically also excluded from the computation.

---

[34] *See supra* at n.33 and accompanying text (emphasis added).

[35] *See supra* at n.32 and accompanying text (emphasis added).

[36] *See supra* at n.27 and accompanying text.

For example, Government Code Section 311.014(a) says, "In computing a period of days, the first day is excluded and the last day is included."[37] The "first day" is the day from which the computation begins but it is also excluded from the computed period. So Article 12.04 does not enable Section 311.014(c) to work from the day after the day of the offense. By its plain language, the time period in Section 311.014(c) can run only from the day the computation period begins—even though that day is excluded—and the day the computation begins for limitations purposes is, under the plain language of Article 12.02, the day of the offense. So if the offense is committed on a July 7th, the monthly computation period under Section 311.014(c), when applied to a two-year period, *must* end on a July 7th.

A second problem with the State's argument is that it is unclear whether Section 311.014(c) even applies. Code of Criminal Procedure Article 101.002 says that the Code Construction Act applies "except as otherwise expressly provided by this title."[38] Section 311.014(c)'s "months" provision is a computational scheme, and notably, it appears in a statute setting forth a comprehensive computational scheme. As we explained earlier, Section 311.014 also includes subsection (a), which directs how a period of "days" will be computed.[39] Subsection (a) calls for excluding the first day and including the last day.[40] As we shall explain later, Subsection (c) also excludes the first day and includes the last day when measuring a period by months. Article 12.04 also sets forth a computational scheme, saying what days are excluded from the computation, and

---

[37] TEX. GOV'T CODE § 311.014(a).

[38] TEX. CODE CRIM. PROC. art. 101.002 (emphasis added).

[39] *See supra* at n.37 and accompanying text.

[40] *Id.*

it is at least arguable that it overrides the more general scheme in the Government Code.

Even if that were not so, there is a third problem with the State's argument: It conflicts with the obvious purposes of both Article 12.04 and Section 311.014(c), as can be ascertained by looking at their texts. On its face, it seems unlikely the Legislature intended to combine Article 12.04 and Section 311.014(c) to reach a result that would not be possible under the plain language of either provision individually—and which clearly exceeds two years. More importantly, an examination of the clear purposes of these computational directives reveals the State's position to be simply untenable.

In *Nesbit v. State*, we acknowledged that Section 311.014(c) rests on the rule now codified in Section 311.014(a), that "when time is to be computed from or after a designated day, the designated day will be excluded while the last day of the period is to be included."[41] In other words, the "months" rule in Subsection (c) is simply an application of Subsection (a)'s "day" rule to months. In running the time period from one numerical day of the starting month to the same numerical day of the concluding the month, the computation is necessarily excluding that first numerical day while including the last numerical day. If one looks at a calendar, a month consists of the first day through the last day of the month. That is because all the days of the month are included in determining the calendar month. If the first day of the month were excluded, then the logical day "a month from now" would be the first day of the next month—which would be the same numerical day. In other

---

[41] *Nesbit v. State*, 227 S.W.3d 64, 68 (Tex. Crim. App. 2007) (quoting *McGaughy v. City of Richardson*, 599 S.W.2d 113, 115 (Tex. App.—Dallas 1980, writ ref'd n.r.e.)); *see also* TEX. GOV'T CODE § 311.014(a) ("In computing a period of days, the first day is excluded and the last day is included.").

words, the legislative scheme involves no double counting of the first and last days.[42]  Otherwise, the period would always be a month and a day, or in this case, twenty-four months and a day.[43]

The Legislature decided to go a step further with Article 12.04.  It is unlikely that an offense occurs at the very beginning of a calendar day, and an indictment cannot be returned at the very end of a calendar day.  These two days are necessarily partial days.  The Government Code scheme is based on the notion that, if we exclude the first day and include the last day, then the time essentially balances out.  But Article 12.04 goes a step further by excluding all partial days to ensure the State always has the benefit of the full limitations period—i.e., when the limitations period is two years, the State gets a period of full days that equals two years.  But the State's construction would give the State an additional full day, which, in every instance, would violate Article 12.02(b)'s requirement that an indictment be returned "within two years from the date of the commission of the offense, *and not afterward.*"[44]

---

[42]  *Nesbit*, *supra*.

[43]  *See id.*

[44]  *See* TEX. CODE CRIM PROC. art. 12.02(b) (emphasis added).  The State contends that Appellant has not preserved his arguments regarding the Code Construction Act because he claimed at trial that limitations was governed solely by Articles 12.02 and 12.04.  The State contends that Appellant is making a new argument by claiming that the Code Construction Act rendered Article 12.04 redundant by excluding the offense date.  The State concedes, however, that Appellant has consistently argued that the indictment is barred by limitations.  And Appellant's position from trial, to direct appeal, to discretionary review has consistently been that the indictment is barred by limitations under the language of Articles 12.02 and 12.04—a position with which we agree.  It is the State that has been relying upon the Code Construction Act to amend how Article 12.04 works in order to support a contrary conclusion.  The trial court had all the relevant statutory provisions before it and was in a position to determine, as we have done, that the State's reliance on the Code Construction Act was misplaced.  Moreover, Appellant has consistently claimed that the State's reliance on the Code Construction Act is misplaced, saying at trial, "You do not add the two [provisions] together."  Given Appellant's express raising of the issue of limitations and his correct reliance on Articles 12.02 and 12.04, we find that Appellant preserved his claim.

When we compare Article 12.04 and Section 311.014(c), we can see that both provisions exclude the first day. Article 12.04 does it by excluding the day of the offense. Section 311.014(c) does it by excluding the day in that first month that the period is computed from, which, in a criminal case, is the day of the offense. Those first-day exclusions are concurrent exclusions—both statutes exclude the *same* first day. The State does not get to exclude the first day under Article 12.04, designate the next day as the new first day, and exclude that new first day under Section 311.014(c). Doing what the State wants would violate the clear meaning of the text of all the statutes we have discussed.

### III. CONCLUSION

We hold that the indictment filed on July 9, 2021, for an assault committed on July 7, 2019, is time-barred because it was not brought within the two-year statute of limitations. We reverse the judgments of the courts below and dismiss the indictment.

Delivered: September 27, 2023

Publish